B. B. Odom, plaintiff in error, *vs.* William C. Gill, defendant in error.

1. If among the panel of twenty-four jurors, a number be related to one of the parties, who are stricken for cause, their places need not be supplied by tales jurors, so as to have a full panel of twenty-four from which to strike, unless the number qualified be reduced below twelve.

2. Where the plaintiff's attorney, after the collection of the money due on the *fi. fa.* by the deputy sheriff and its payment to him, loaned a part thereof to the deputy sheriff, the principal sheriff is not liable therefor.

3. Testimony of the deputy sheriff that the money was paid over by him to the attorney, and by the attorney loaned to the deputy sheriff, is inadmissible after the death of the attorney.

Jurors. Practice in the Superior Court. Sheriffs. Witness. Before Judge CLARK. Lee Superior Court. March Term, 1877.

This was an appeal from the county court to the superior court. Gill, former sheriff, moved to set aside an attachment issued against him by the clerk of the county court. The facts alleged were, in brief, as follows:

In 1859, Warren & Floyd, attorneys at law, placed in the hands of Sullivan, the deputy sheriff, a *fi. fa.* in favor of Odom against Folds *et al.* Sullivan collected the money and paid it to Floyd. He stated, however, to the latter that there was an attachment against him, and that he would like to borrow about $300.00 of the money till the next term of court, in order to settle said attachment. Floyd loaned him the money. On his failure to repay it at the next term, a rule was brought against him; it was made absolute, and attachment issued. Movant heard no more of the matter until 1861, and supposed it had been settled. In February, 1861, long after movant had gone out of office, the attorneys ruled movant before the inferior court for the default of his deputy. Sullivan was out of office and inaccessible before the return of the rule. Movant had heard the facts stated above, but so much from rumor, and in such a general way,

that he was unable to plead them under oath.   He asked the
court for time to confer with Sullivan, which was refused;
and an order was granted requiring that he pay the full
amount due on the *fi. fa.* within sixty days, or, in default
thereof, that attachment should issue against him.   Nothing
more was done in the case until recently, when, on applica-
tion of Warren, the clerk of the county court issued an at-
tachment against movant.

The grounds of illegality alleged were substantially as
follows:

(1.) Because the order of the inferior court was not founded
on a rule made absolute fixing movant's liability, and was
illegal.

(2.) Because he was not liable for the failure of his deputy
to repay borrowed money, especially where he did not know
the facts; and he was guilty of no contempt of court.

(3.) Because the clerk of the county court was not author-
ized by said order of the inferior court, nor by any law, to
issue such an attachment.

On the trial, the evidence for movant corresponded with
the allegations of the motion, and also showed that Sullivan
exhibited great indisposition to give movant the particulars,
and the latter never knew fully what the evidence of the
former would be until after the death of Floyd.

The evidence for respondent differed from that for movant
in the following points:   The money was not paid by Sul-
livan to Floyd, and then some $300.00 returned to him as a
loan; but Sullivan collected the amount of the *fi. fa.*, used
a part of it without permission, and paid over the balance.
He recognized his liability to rule, as did also movant.   The
latter wrote a letter to Odom, in 1867, recognizing his liabil-
ity for the action of his deputy, stating that he then had no
money, and requesting further time, as otherwise he would
have to go to jail.

The jury found that the whole amount of the *fi. fa.* had
been paid to Floyd, and $315.00 loaned by him to Sullivan.
The rule absolute was accordingly set aside.   The respondent,

Odom, moved for a new trial, on the following among other grounds :

(1.) Because, when two of the jury related to movant had been stricken for cause, the court refused to have their places supplied and complete the full jury of twenty-four men, but compelled respondent to strike from the remaining twenty-two.

(2.) Because the verdict was contrary to law and the evidence.

(3.) Because, Sullivan having died, the court admitted evidence that, on a former trial of this case, he had sworn to the payment of the money to Floyd and the loan made by the latter to him.   This was objected to on the ground that Floyd was dead when Sullivan so testified.

The motion was overruled, and Odom excepted.

K. J. Warren ; L. P. D. Warren, by brief, for plaintiff in error.

W. A. Hawkins ; Fred. H. West, for defendant.

Jackson, Judge.

A rule absolute was obtained against Gill, the sheriff of Lee, for the default of his deputy, in not paying over money collected by the deputy.   Some five or six years afterwards, a motion was made to vacate, or set aside, the rule.   It was vacated after verdict, and Odom moved for a new trial, on grounds set out in the motion, which was overruled, and Odom brings the case here on the refusal of the court to set aside the verdict and grant the new trial.

1. The first ground is that the court erred in refusing to fill up the panel of petit jurors to twenty-four—two of them being related to the sheriff—but had the two stricken for cause, and then the jury made from the remaining jurors. We think that the court acted in accordance with the old practice in striking a special jury from the grand jury.   No harm seems to have been done ; no effort was made to purge

the remaining jurors, and there is no pretence that any were not impartial. The jurors who tried the case were "*omni exceptione majores*," so far as the record shows us any thing about them, or either of them.

2. There can be no doubt, we think, that if the deputy sheriff paid over the money to the plaintiff's attorney, and the attorney loaned some of it to him, that the high sheriff, or principal sheriff, would be relieved. The act of the attorney is the act of the plaintiff. The sheriff is bound to obey him, and when he got the money, the deputy sheriff had done his duty as an officer in paying it to him. Whatever blame may attach to the deputy for borrowing from the attorney money which belonged to his client, was a matter between the two. The attorney clearly acted badly; the deputy certainly acted not very circumspectly; but the sheriff-in-chief was not at all to blame. The transaction between the deputy and the attorney, after the money was paid to the attorney, was a dealing between the two as men—not as officers. The attorney assumed the debt to his client, and the deputy owed it to the attorney.

It would certainly be very unjust, however we may view the deputy sheriff's conduct in borrowing the money, to make the sheriff responsible. If the deputy had stolen the money, after he paid it over, would the sheriff have been responsible? Hardly, we think; no more would he be, if he borrowed it; indeed, much less would he be, inasmuch as to borrow, though one knows it is not the lender's money, is not so bad as to steal.

3. But after the death of Floyd, the attorney, was it competent for Sullivan to testify that he paid Floyd the money and borrowed it back? Odom is held bound by the contract that Floyd, as his agent, made with Sullivan, the deputy of Gill, the high sheriff. The effort is a naked one to discharge the sheriff from his liability on account of the deputy's default, by the deputy's testimony that he paid the money collected to a dead man, whose mouth is closed forever. Principle is against allowing such one-sided evidence, and the

spirit of the evidence act is to the same effect. Suppose Odom was charged with having made the contract, and loaned the money, and he were dead, could Sullivan, the other party to the contract, which is set up to relieve Gill, be allowed to testify about it? We think not; and if Odom's contract was made by an agent, or attorney, for him, and that agent were dead, could the other party to it be a witness? We think that the same reason and spirit of the rule would exclude the witness in the one case as in the other. See 55 *Ga.*, 187; 54 *Ga.*, 115, 174, and others. Besides, if the deputy, by his oath, relieves his principal, does he not relieve himself? How much this evidence may have influenced the jury, we cannot tell. There was other evidence of the fact of this payment and loan, to the admissibility of which we see no objection; but other facts proven were in conflict therewith, and possibly what Sullivan swore, as testified to by Gill and another, on the trial in the county court, may have turned the scales. At all events, we think the admission of this evidence of what Sullivan swore, error enough to demand a new trial.

4. The facts in this record would seem to make this case *res adjudicata*, but for the ruling of this court in 2d Kelly, 224, and 4th Kelly, 200; also, in 15 *Ga.*, 182. It seems from these cases, that the court may set aside a rule absolute, whenever it has not been fully heard on the merits; and the whole facts here were not before the court when the rule was made absolute against Gill. Indeed, a former recovery has been pronounced by this court good in any case only when the real merits were passed upon in the former case. 6 *Ga.*, 495.

The case is a very singular one. Sullivan's reluctance to tell Gill about it; his silence until Floyd's death; and his general conduct touching this matter, as the record shows it, is curious.

The best we can do with the case is to send it back, and let it be tried on its merits, leaving out what Sullivan swore about it, as Floyd, the other party to the contract attempted to be set up to excuse the sheriff, is dead. If one cannot be

heard in behalf of himself and his client on this contract, which is *the issue* in this case, the other party to it ought not to be heard to excuse his principal, the high sheriff, by proving that he paid the money to, and borrowed it of, the dead attorney.

For cases ruling on competency of witnesses where party is dead, see 36 *Ga.*, 520, 565, 568; 37 *Ib.*, 118, 586, 623, 650; 38 *Ib.*, 106; 39 *Ib.*, 187, 479; 40 *Ib.*, 150, 193, 490, 671; 41 *Ib.*, 123; 42 *Ib.*, 120; 44 *Ib.*, 46, 51, 73; 45 *Ib.*, 25, 147, 410, 468, 511; 46 *Ib.*, 414; 47 *Ib.*, 273, 328, 359, 650; 48 *Ib.*, 142, 580; 49 *Ib.*, 120, 479; 50 *Ib.*, 204, 395, 474; 51 *Ib.*, 47, 600, 624; 52 *Ib.*, 315, 385, 640, 648; 53 *Ib.*, 9, 84; 54 *Ib.*, 115,119, 174, 222, 231, 451, 498, 623, 630; 55 *Ib.*, 98, 124, 187; 56 *Ib.*, 47, 410, 474, 638.

Judgment reversed.