KINGSBERY, receiver, *et al. v.* RYAN.

1. A person undergoing imprisonment under a judgment of the superior court adjudicating him to be in contempt in disobeying an order to pay over money to a receiver, which adjudication has been affirmed by the Supreme Court, having, after the passage of the act of December 22, 1892, providing for trial by jury before imprisonment for contempt, petitioned the superior court for a trial, in the manner prescribed by that act, of the question of contempt, the case made by the petition was not a mere motion touching the mode of conducting a pending proceeding in the original case, but was itself a new and distinct case having for its object a trial *de novo* of the question of contempt, just as though that question had not been previously tried and finally determined before the passage of the act on which the petition was founded. The granting of a motion to dismiss the petition would consequently have been a final disposition of the case thereby made. This being so, a denial of the motion by the superior court is, under section 4250 of the code, subject to review by writ of error, although, because of such denial, the case is still pending in that court.

2. The direction given by this court in the case of *Ryan* v. *Kingsbery, receiver, et al.*, 89 *Ga.* 228, did not provide for or contemplate the opening or modification of the judgment by which the fact of contempt was adjudicated, or the rendition of any new judgment on that subject. The object of the inquiry suggested was to ascertain whether, on the actual facts, and notwithstanding the legal

conclusiveness of the judgment on the question of contempt, the imprisonment should be continued or terminated. To guide the discretion of the court in administering remedial punishment, the term of which is not fixed by law, all pertinent facts may be adduced and considered, no matter whether they be consistent or inconsistent with a previous judgment in the same or in any other case. The conscience of the court may seek light wherever it is to be found. The element of conclusiveness in the judgment does not extend to the duration of the imprisonment. If so, the imprisonment might be perpetual.

3. In the direction above mentioned, there is nothing to hinder or prevent the presiding judge from referring or refusing to refer to a jury any question of fact arising upon the auditor's report, the method of informing his conscience as to the actual truth of disputed facts being no less open to his discretion in this case than in any other in which the powers of a court of chancery are to be exercised. Indeed, nothing whatever contained in the direction was intended to be mandatory, except as to the range of the inquiry, if any should be made, and its freedom from the trammels of any previous investigation.

4. The act of 1892 above mentioned is prospective in its whole scope and purpose. It does not apply, and was not intended to apply, to any case in which a party had, previously to its passage, been adjudged guilty of contempt, and was undergoing punishment therefor when the act was passed.

5. Imprisonment for contempt, when not regulated by statute, being subject to the sound discretion of the court, or the presiding judge, it is not *per se* illegal to admit to bail one who has been adjudged guilty of contempt and who has undergone a protracted punishment therefor, this being done while a lengthy inquiry is in progress to ascertain whether he ought to be further imprisoned or not. The act of 1892 not being applicable to the pending investigation of the auditor's report, the judge should determine the question of allowing or refusing bail without reference to the provisions of that act.

May 22, 1893.

Motion for trial by jury, etc. Before Judge M. J. CLARKE. Fulton superior court. September term, 1892.

CALHOUN, KING & SPALDING, N. J. & T. A. HAMMOND and ROSSER & CARTER, for plaintiff in error. J. L. HOPKINS & SON, A. H. COX and W. R. BROWN, *contra.*

LUMPKIN, Justice.

In *Ryan* v. *Kingsbery, receiver, et al.*, 88 *Ga.* 361, this

court affirmed a judgment of the superior court of Fulton county adjudicating that Ryan was in contempt of the court by disobeying its order to pay over money to the receiver. Afterwards, he filed a petition for a rehearing, and prayed that he might be allowed to show that he was not then, and had not at any time been, in contempt of the court. In *Ryan* v. *Kingsbery, receiver, et al.,* 89 *Ga.* 228, the judgment of the court below denying this petition was affirmed, this court holding that the question of contempt was *res adjudicata*. It further held that, inasmuch as no person should be detained in prison for a failure to pay money into court or deliver the same to a receiver if there was ground for reasonable doubt of his ability to do so, the doctrine of *res adjudicata* could not be invoked or used to make imprisonment perpetual; and accordingly, under the power conferred upon this court by section 4284 of the code, the following direction was given to the judge below, viz: "that if, in his discretion, he shall think the ends of justice so require, he refer it to a master or auditor to take testimony and report to him as to the amount of money or other assets in the hands or under the control of Stephen A. Ryan, and as to his ability to comply with the order of July 28th, 1891, requiring him to surrender to the receiver the sum of $120,490.79, and that upon reception of the report, the said judge do consider the same and take such action thereon with reference to the discharge or further detention of said Ryan as, in the exercise of his discretion, he may deem consistent with right and law. The inquiry embraced in this direction will be conducted independently of any previous inquiry, and will involve an account of all money and other assets in the hands or under the control of said Ryan at the time he was attached for contempt and subsequently." Exercising his discretion and pursuing the above direction, Judge

CLARKE appointed an auditor, who made a report finding that on July 28, 1891, when demand was made upon Ryan by the receiver, he (Ryan) had in his hands or under his control the sum of $73,529.82 which he was able to surrender to the receiver.  Various exceptions were filed by the parties on both sides to this report, and action upon the same is still pending in the court below.  On the 22d day of December, 1892, and while matters were in the condition above indicated, the legislature passed an act amending section 4711 of the code by adding thereto a proviso in the following language: " Provided, that in no case shall any person be imprisoned for contempt for failing or refusing to pay over money under any order, judgment or decree of any court of law, or any court of this State, when he denies that the money ordered or decreed to be paid over is in his power, custody or control, until he has had a trial by jury as hereinafter provided.  The allegation of the plaintiff, receiver, referee, or any other person or persons, that the defendant has a certain sum of money within his power, custody or control, which he is withholding or refusing or fails to pay over, and the denial of the defendant that he has the power, custody or control of said money, shall form the issue to be tried by the jury, and the jury shall pass upon the facts," etc.  Acts of 1892, p. 65.

Thereupon the counsel for Ryan immediately presented to the presiding judge a petition as follows:

"Charles S. Kingsbery, *v.* receiver, Stephen A. Ryan. } Proceedings for contempt. In Fulton superior court.

"Defendant in the above stated case comes and respectfully represents to the court that he is now imprisoned in the county jail of Fulton county for failing to pay over to the plaintiff, as receiver, certain money under an order of this court heretofore made in the case of L. & C. Wise and others against this defendant and

others. The plaintiff, as receiver, alleged that defendant had a certain sum of money within his power, custody or control, which he was withholding and refusing and failing to pay over, and defendant has denied that he had the power, custody or control of said money, or any part thereof, and he now here again repeats said denial. Defendant asks permission of the court to file this, his motion, that the issue formed by said allegation of the receiver and denial of defendant may be tried by a jury."

The receiver demurred to this petition on various grounds, and moved to dismiss it. The presiding judge overruled the demurrer, refused to dismiss the petition, and passed an order granting the prayer for a trial by jury "as provided in the act approved December 22d, 1892," and directing that Ryan be admitted to bail, "the bond to be conditioned for his personal appearance to answer the judgment or decree of the court in the premises." The bill of exceptions in the present case assigns as error the granting of this order.

1. A motion was made to dismiss the writ of error, on the ground that "the case" had not been finally disposed of, and was pending in the court below. It will be observed that the petition filed by Ryan does not make the slightest reference or allusion to the auditor's report, the exceptions thereto, or the pending proceedings thereon. It is plainly and manifestly an effort to obtain a trial of the question of contempt in the manner pointed out by the act above referred to. Its evident object and purpose was to secure a *de novo* investigation of that question, without any reference whatever to the fact that it had already been tried and finally adjudicated. In our opinion, this petition of itself originated an entirely new and distinct case. It cannot be regarded as a motion for a trial by jury of the issues between the parties arising upon the auditor's report and the exceptions filed to the same. There is nothing whatever in the record to indicate that it had any such

purpose. On the contrary, it sought a new and independent trial by jury of the issues originally made between the receiver and Ryan. The fact, therefore, that the proceedings upon the auditor's report are still pending and undisposed of in the court below, presents no reason whatever for dismissing the case now before this court on the ground that it was brought up prematurely. If the court had granted the motion to dismiss the petition of Ryan, that certainly would have been a final disposition of the case made by that petition, and consequently a denial of this motion is, under section 4250 of the code, subject to review by writ of error, that section authorizing the suing out of a bill of exceptions whenever "the decision or judgment complained of, if it had been rendered as claimed by the plaintiff in error, would have been a final disposition of the cause."

2. The able jurist whose judgment is now under review, and who is deservedly distinguished for the clearness and accuracy of his legal judgment, but who, like all mortals, is not infallible, fell into the error of supposing that by the direction given in the case reported in 89 *Georgia, supra,* the object of this court was "to grant to Mr. Ryan a full rehearing of his case, just as if it never had been tried by any court before." An examination of the opinion filed by Judge CLARKE will show that by the language above quoted therefrom he meant to say that he understood the question of contempt or no contempt was reopened. We had not supposed that the language used in this direction was susceptible of this construction. Having expressly and distinctly ruled that the fact that Ryan was in contempt of the court was *res adjudicata,* and having in that case affirmed the judgment of the court below so determining, we certainly did not intend that the previous judgment by which the fact of contempt had been originally adjudicated should be reopened or in any manner modified, or

v 92-8

that any new judgment on this subject should be ren-
dered.  We do not think the language of the direction
given, considered by itself, necessarily imports that any
such thing was intended; and when that language is
construed in the light of the surrounding facts and the
history of the litigation up to that time, giving this
court credit for consistency, there would be even less
room for doubt upon this question.  There is the widest
possible difference between the legal conclusiveness of a
judgment, and the actual truth of what it adjudicates.
Judgments are conclusive between parties upon the facts
to which they relate, but every one knows that judg-
ments by the hundred fail to speak the real truth of the
cases in which they were rendered.  The object of the
inquiry suggested by the direction above recited was,
that the trial judge should ascertain whether or not, on
the actual facts of the case as they might be made to
appear to him, Ryan should be discharged or his im-
prisonment protracted; and it was contemplated that if
an investigation was made at all, the judge would en-
deavor, notwithstanding the legal conclusiveness of the
judgment on the question of contempt, to discover what
the real truth of the matter was.  We have already
shown that a judgment may be absolutely conclusive and
yet not speak the truth.  This is so because, for reasons
of public policy, judgments must generally be held con-
clusive between the parties, not only upon what was
actually examined by the court, but upon all matters
which the parties could and ought to have presented,
whether they presented the same or not.  If, as a result
of the investigation above referred to, it should unequiv-
ocally appear that Ryan in fact had no money when the
demand was made upon him by the receiver (a possi-
bility suggested by Judge CLARKE in his opinion already
alluded to), it would by no means follow that the judg-
ment of contempt would be *ipso facto* set aside or made

void. It would simply show that the judgment was wrong and ought never to have been rendered, but would not affect the question of its legal conclusiveness. There is, moreover, a great difference between judgments in contempt cases and ordinary judgments between parties. In *Holcombe* v. *Dupree*, 50 *Ga.*, on page 338, Judge McCAY said this court had in two cases (referring to *Chipman* v. *Barron*, 2 *Ga.* 220, and *Davis* v. *Dempsey*, 15 *Ga.* 182) decided that rules absolute against sheriffs for contempt did not stand altogether like judgments between parties and did not operate as estoppels, but that the court, upon a proper case made, would go behind the order and look into the truth of the case. And again in *Wakefield* v. *Moore*, 65 *Ga.*, on page 270, CRAWFORD, J., referring to all the above cited cases, remarked, in speaking of rules absolute against sheriffs, that: "Such judgments are not final and conclusive as are those rendered between parties litigant; they are but the dealings of the court with one of its defaulting officers," and " do not operate as estoppels, but the court, upon a proper case made, will go behind the order and look into the truth of the case, and in its discretion re-examine the same." It will thus be seen that this court has several times decided that rules absolute against sheriffs, which are judgments for contempt, may be absolutely set aside by the courts rendering them. According to the ruling in *Thweatt* v. *Kiddoo*, 58 *Ga.* 300, cited and followed by this court in 89 *Georgia, supra*, the superior court would not, after a judgment of contempt had been rendered and the same had been reviewed and affirmed by this court, have the power to set the same aside for any reason existing at the time such judgment was originally rendered ; but the cases cited from the 2d, 15th, 50th and 65th volumes of the *Georgia Reports*, and also those of *Barron* v. *Chipman*, 4 *Ga.* 200, *Standley* v. *Harrison*, 26 *Ga.* 139, and *Odom* v. *Gill*, 59 *Ga.*

180, certainly sustain the assertion that judgments for contempt do not stand upon the same footing as ordinary money judgments; and a careful examination of these cases will also show that the courts, in exercising the power to administer remedial punishment, have a very wide discretion, and that no man should be punished for a contempt of which he is actually not guilty simply because he has been adjudged to be in contempt. This principle, we think, should undoubtedly govern the conduct of the court, whether in point of fact the judgment of contempt be set aside or not. Therefore, we think it both lawful and just that the discretion of the court in cases of imprisonment for contempt, unless the term of imprisonment is fixed by statute, should, where there are apparently good grounds for so doing, be exercised, and that the judge should be guided by all pertinent facts bearing upon *the real truth of the matter*, whether the same be consistent or inconsistent with a previous judgment in the same or in any other case. In matters of such grave importance, involving the liberty of a citizen, the conscience of the court may and should seek and be influenced by all possible light from whatever source. The direction above referred to was given in the spirit of these principles, and its intention was to allow the court below, if he should think proper to make any further investigation, the fullest scope for the ascertainment of the truth, that he might be thus enabled to wisely exercise his discretion in determining whether the imprisonment of Ryan should be continued or terminated. All this, we think, is entirely consistent with the fact that Ryan has been adjudged to be in contempt, and that this judgment remains unaltered and of full force. It may be remarked, however, that nothing in the judgment is conclusive as to the duration of the punishment. Should the judgment be held to be absolutely and finally conclusive

upon this matter, the imprisonment might be perpetual. It is true the order of imprisonment does direct that Ryan shall remain imprisoned until he shall deliver to the receiver the amount of money therein specified, but this should certainly not constrain the court to keep him in prison to the end of his days, if, in point of fact, it is absolutely impossible for him to deliver the money, or if, in the opinion of the court, he has already been sufficiently punished for his disobedience of its order. The judgment adjudicates the fact of contempt. That part of it which orders the imprisonment does not adjudicate any fact, but relates merely to the enforcement of the judgment, and cannot, we think, conclusively and irrevocably bind the court to protract the imprisonment indefinitely. It is, and should ever be, with or without direction from this court, within the power of the court below to determine, in cases like this, when its punitive power has been sufficiently exercised.

3. It has always been within the power of a court of chancery to call a jury to aid the chancellor in arriving at the truth when there are disputed issues of fact. Indeed, such has been the usual practice. In a case like the present, the presiding judge, if he deems it proper, may determine for himself, without such aid, all questions of fact arising upon the auditor's report; but inasmuch as the case upon which the contempt proceedings were founded is one in which the court is exercising chancery powers, we see no reason why the judge may not, if such course seems advisable to him, invoke the aid of a jury in arriving at a proper conclusion upon the questions of fact presented. It is a matter of discretion as to what method he will adopt to arrive at the actual truth to be ascertained. The direction above mentioned contains nothing to the contrary of what is here said. Indeed, it was not intended to be mandatory in any of its terms, except that if the inquiry therein

suggested should be made at all, it should cover the whole range indicated, and be absolutely free and untrammeled by any investigation previously had.

4. The above recited act of 1892 is, by its own express terms, prospective, and this is true as to its entire scope and purpose. Even if it could constitutionally do so, it does not in fact apply, and in our opinion was not even intended to apply, to any case like the present in which a party had already been adjudged guilty of contempt, and was undergoing punishment for the contempt at the time the act was passed. It declares, that from and after its passage section 4711 of the code is to be amended "so that said section, when amended, *shall* read," etc. Nothing in the act gives it any application to cases already disposed of, or indicates that it shall have any operation except as to cases of contempt arising after its passage. That this is the proper view of this act, we think too obvious to require argument.

5. Exception was also taken to so much of the order of the court as admitted Ryan to bail. It has already been shown that the duration of imprisonment for contempt, when not regulated by statute, is subject to the sound discretion of the court, or the presiding judge. Accordingly, it would be within the power of the judge, for proper and sufficient reasons, to discharge absolutely from imprisonment a person undergoing punishment for contempt in cases of this character. The power to discharge absolutely necessarily includes the power to grant a qualified discharge, or release from imprisonment, by allowing bail pending a protracted investigation, the very purpose of which is to ascertain whether the party ought to be further imprisoned or not. In the present case, however, the judge being erroneously of the opinion that the judgment of contempt against Ryan had been practically set aside by the judgment of this court, and consequently having held that the act of 1892

would be applicable to the trial by jury contemplated by the order granted by him, may have considered it his imperative duty to allow bail in accordance with the provisions of the act mentioned. It having been shown that the court erred in peremptorily ordering a trial by jury to be conducted in the manner pointed out by this act, and it being manifest from what has been said that he should proceed with the pending investigation of the auditor's report, to which the act is certainly not applicable, the question of allowing or refusing bail should be determined by him without reference to the provisions of the act, but upon the general discretion vested in him in cases of this kind.

In the light which may be thrown by this opinion upon the questions hereafter arising in this tedious litigation, we trust it may be brought to a proper conclusion without further difficulty on the part of either court or counsel as to the principles of law and practice involved.　　　　　　　　　　*Judgment reversed.*