### 65080. COHRAN v. CARLIN et al.

CARLEY, Judge.

The instant appeal has a rather complicated history, a summary of which is necessary to the resolution of the issue presented.

Appellee-plaintiffs, the Carlins, instituted suit against appellant-defendant, Cohran, a practicing attorney. Subsequently, the Carlins sought to depose Cohran in connection with their pending action. During the deposition, Cohran refused to answer some 91 questions, premising his objections on various grounds, including irrelevancy, immateriality, and an assertion that answering would work a forfeiture of his estate or tend to bring infamy or disgrace or public contempt upon himself or any member of his family. Apparently, however, Cohran did not at this time specifically assert a Fifth Amendment privilege and object on the basis that answering would tend to incriminate him. The Carlins made a motion to compel discovery and the trial court, after conducting a hearing, ordered Cohran to respond to some 71 of the 91 unanswered questions. At this hearing on the motion to compel, Cohran did assert that his objection during the deposition to several of the Carlins' questions, no one of which is at issue in the instant appeal, was "the equivalent of the Fifth Amendment" and that the evidence sought thereunder "might tend to incriminate" him.

When Cohran subsequently failed to comply with the trial court's order requiring that he answer the 71 questions, he was adjudged in contempt. Cohran then appealed from the contempt order. This contempt order was affirmed in *Cohran v. Carlin,* 160 Ga. App. 762 (288 SE2d 81) (1981). The affirmance by this court of the

contempt order was itself upheld by the Supreme Court on certiorari in *Cohran v. Carlin,* 249 Ga. 510 (291 SE2d 538) (1982).

When the remittitur affirming the contempt order was returned to the trial court, Cohran's deposition was rescheduled in order that he could answer the 71 previously unaddressed questions and thus purge himself of contempt. During the rescheduled deposition, Cohran for the first time invoked his Fifth Amendment privilege against self-incrimination and, on this basis refused to answer some 15 or 16 of the original 71 questions the trial court had previously ordered him to answer. No such privilege or objection to these specific questions had ever previously been invoked or raised during either the original deposition or the original hearing on the motion to compel. After Cohran had been redeposed, he moved for an order discharging his contempt for having failed to obey the trial court's original directive to answer the 71 questions. The trial court denied Cohran's motion for discharge and it is from this order that Cohran brings the instant appeal.

It is essentially Cohran's position that, on the above-stated facts, he did not waive his Fifth Amendment privilege against self-incrimination as to any of the original 71 unanswered questions and that his subsequent invocation of that privilege as to several of the questions at the rescheduled deposition was therefore not in continuing contempt of the trial court's order requiring that he respond to the questions. Accordingly, the issue presented for resolution in the instant appeal may be stated as follows: Where a witness in a civil action fails to invoke his Fifth Amendment privilege when the question is originally asked, relying solely on other objections and privileges in refusing to answer, and the trial court orders that the questions be answered over the stated objections, can the witness, subsequent to an affirmance of the trial court's order by the appellate courts, avoid being cited for contempt by then asserting a self-incrimination privilege as the basis for his refusal to respond to the question?

" 'The protections of the Fifth Amendment may be invoked in civil as well as criminal actions, [cits.], and apply fully to state proceedings through the Fourteenth Amendment.' [Cit.]" *Tennesco v. Burger,* 144 Ga. App. 45, 47 (240 SE2d 586) (1977). However, "there '. . . is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings ". . . The privilege must be specifically claimed on a particular question and the matter submitted to the court for its determination as to the validity of the claim," '. . ." *Tennesco,* 144 Ga. App. at 48, supra. "Only the witness knows whether the apparently innocent disclosure sought may incriminate him, and the burden appropriately lies with him to make

a timely assertion of the privilege." Garner v. U. S., 424 U. S. 648, 655 (96 SC 1178, 47 LE2d 370) (1976).

At the original deposition, Cohran invoked no specific claim of his Fifth Amendment privilege as to the relevant questions at issue in the instant appeal. "[T]he claim of privilege should be made when the question is asked . . . [i]t cannot operate as a general prohibition of inquiry . . ." *Chastain v. State,* 113 Ga. App. 601, 602 (149 SE2d 195) (1966). That Cohran was not unaware of his rights under the Fifth Amendment is established by the fact that he argued the privilege against self-incrimination as to some of the other questions during the original hearing before the trial court on the motion to compel.

During the original deposition and hearing on the motion to compel, Cohran asserted various other privileges and objections to answering the questions. None of the objections which Cohran originally raised addressed the fundamental underlying authority of the Carlins to obtain discovery. In other words, none of Cohran's original objections, if sustained by the trial court or an appeal, would have resulted in a holding that the Carlins had no right, generally, to depose him in the pending litigation. Compare Murphy v. Waterfront Commission of New York, 378 U. S. 52 (84 SC 1594, 12 LE2d 678) (1964) (holding that one who relied, in refusing to answer questions, on the supposed lack of authority of the agency involved to deal with the subject matter, was not, under the circumstances, precluded from invoking his Fifth Amendment privilege after his jurisdictional objection proved unsuccessful). Under these circumstances, Cohran's original failure to specifically raise the Fifth Amendment privilege against self-incrimination as to the relevant questions in the instant appeal cannot be viewed as a "silent" invocation of that privilege. "[T]he witness may not stand [mute], but must testify that the answer would criminate or tend to criminate himself, work a forfeiture of his estate, or tend to bring infamy or disgrace or public contempt upon himself or any member of his family as the case may be, otherwise he would be in contempt. [Cits.]" *Wynne v. State,* 139 Ga. App. 355, 357 (228 SE2d 378) (1976). Compare *Bishop v. Bishop,* 157 Ga. 408 (121 SE 305) (1923).

It appears that if Cohran, having failed to raise his Fifth Amendment privilege in the trial court, had asserted that privilege for the first time in the appellate courts on the prior appeal of the order citing him for contempt, that assertion of the privilege would have been untimely and unavailing. "Throughout the proceedings before the [trial court, Cohran] did not assert his privilege or in any manner suggest that he withheld his testimony because there was any ground for fear of self-incrimination. His assertion of it here is evidently an afterthought. It is for the tribunal conducting the trial to

determine what weight should be given to the contention of the witness that the answer sought will incriminate him, [cit.], a determination which it cannot make if not advised of the contention. [Cits.] *The privilege may not be relied on and must be deemed waived if not in some manner fairly brought to the attention of the tribunal which must pass upon it.* [Cits.]" (Emphasis supplied.) Vajtauer v. Comm'r of Immigration, 273 U. S. 103, 113 (47 SC 302, 71 LE 560) (1927). See also *Garland v. State of Ga.,* 101 Ga. App. 395, 400 (2) (114 SE2d 176) (1960).

It is true that, in this case, Cohran eventually "raised" his Fifth Amendment privilege in the trial court. However, that the privilege was first raised only in the context of proceedings occurring subsequent to the affirmance by both appellate courts of the trial court's original contempt order which directed Cohran to answer the enumerated questions over the stated objections. "After a remedial proceeding for contempt has been reviewed and affirmed by the supreme court, as to the imprisonment ordered, and as to the terms prescribed in the order for avoiding imprisonment, the terms will not, before the imprisonment has commenced, be changed because the party is unable to comply, unless he has become unable since the order was passed. *Defenses or excuses which were, or might have been, presented before, are res adjudicata.*" (Emphasis supplied.) *Thweatt v. Kiddoo,* 58 Ga. 300 (1) (1877). See also *Ryan v. Kingsbery,* 89 Ga. 228 (1) (15 SE 302) (1892). "According to the ruling in *Thweatt v. Kiddoo,* 58 Ga. 300, . . . , the superior court would not, after a judgment of contempt had been rendered and the same had been reviewed and affirmed by this court, have the power to set the same aside for any reason existing at the time such judgment was originally rendered . . ." *Kingsbery v. Ryan,* 92 Ga. 108, 115 (17 SE 689) (1893). Accordingly, we hold that, under the limited and unique circumstances which exist in the case at bar, the trial court was clearly authorized to conclude that Cohran's post-appeal assertion of the Fifth Amendment "privilege against self-incrimination was pure afterthought," (Rogers v. United States, 340 U. S. 367, 371 (71 SC 438, 95 LE 344) (1951)), and that he waived that privilege by failing to invoke it in a timely and proper fashion at the "first opportunity." See generally *Cohran v. Sosebee,* 120 Ga. App. 115, 121 (169 SE2d 624) (1969). The trial court did not err in refusing to discharge Cohran from contempt. See generally *Wood v. Wood,* 240 Ga. 861 (242 SE2d 599) (1978).

*Judgment affirmed. Quillian, C. J., and Shulman, P. J., concur.*

Decided November 3, 1982 —
Rehearing denied January 17, 1983 — 

*Roy E. Barnes, Thomas J. Casurella, Fletcher Thompson,* for appellant.

*Taylor W. Jones, Hylton Dupree, Jr.,* for appellees.

On Motion for Rehearing.

In his motion for rehearing, appellant asserts that our holding is in conflict with *Ga. R. &c. Co. v. Lybrend,* 99 Ga. 421 (27 SE 794) (1896). "The fact that Lybrend had made the waiver at a formal hearing before a different jury, and under circumstances necessarily to a greater or less extent unlike those surrounding the last trial, did not preclude him from exercising his privilege at a later stage of the case . . . Considered merely as any other witness, Lybrend therefore had a right to claim his privilege at the last trial, notwithstanding the fact that at a previous hearing of the case he may have voluntarily waived it." *Lybrend,* 99 Ga. at 439-441, supra. See also *Mallin v. Mallin,* 227 Ga. 833, 836 (3) (183 SE2d 377) (1971).

Unlike the *Lybrend* and *Mallin* decisions, the issue of waiver in the instant case is presented by Cohran's total failure to assert the privilege in a timely and appropriate fashion, by invoking it in the trial court during the course of the *original and only* proceedings which have been held to determine whether Cohran's answers were compellable. Vajtauer, 273 U. S. 103. In *Lybrend* and *Mallin* the witness originally waived his privilege and testified freely as to certain matters at a former trial but, at a *subsequent de novo* proceeding, invoked his privilege as to those matters. On these facts, it was held that the witness' original testimony as to the incriminating matters was not an irrevocable waiver of the privilege and that he could "subsequently, at a second and entirely different trial, [claim] his privilege of giving no testimony whatever in regard thereto . . . A party often waives at one trial what he has an undoubted right to object to at a subsequent hearing of the same case." *Lybrend,* 99 Ga. at 441, supra. In short, *Lybrend* and *Mallin* "simply [hold] that a party who [waives the privilege] at one trial may claim the privilege against self incrimination at a later trial." *Feig v. Feig,* 246 Ga. 763, 764 (272 SE2d 723) (1980).

In direct contrast, Cohran's actions with regard to the privilege — his original failure to assert it and his subsequent belated invocation of it in defense of his refusal to testify — occurred in the context of continuing proceedings in the same case, not de novo and separate trials. The issue is and always has been whether, to avoid being held in contempt, Cohran should answer certain questions in connection with pre-trial discovery in appellants' only suit. However,

after *Cohran,* 249 Ga. 510, supra, the rescheduling of Cohran's deposition order that he purge himself of his original contempt was not a totally de novo hearing on the issue of whether Cohran should be compelled to answer the previously unaddressed questions. At that point, the trial court, this court and the Supreme Court had already held that Cohran should be compelled to answer the questions over all of the objections previously urged and that his refusal to do so was contempt. Where Cohran was aware of his privilege and could have asserted it before the trial court in defense of his original refusal to answer the questions, Cohran's post-appeal invocation of the privilege is ineffective to purge his contempt. *Thweatt,* 58 Ga. 300, supra. See also *Ryan,* 89 Ga. 228, supra; *Kingsbery,* 92 Ga. 108, supra.

Our judgment affirming the trial court's refusal to discharge Cohran for contempt is adhered to.

*Motion for rehearing denied.*