### 4604. WRIGHT et al. v. THE STATE.

An outhouse in a field between two and three hundred yards from a mansion or dwelling-house, and used by the owner of the mansion or dwelling-house as a smoke-house or "meat house" for the storage of his meats for domestic purposes, and not within a common enclosure with the dwelling-house, is not an outhouse "contiguous to or within the curtilage or protection of the mansion or dwelling-house;" and the breaking and entering such an outhouse with intent to steal does not constitute the crime of burglary, but may constitute the offense of larceny from the house.

DECIDED MARCH 18, 1913.

Indictment for burglary; from Coffee superior court—Judge Parker. November 13, 1912.

*J. W. Quincey, C. A. Ward, W. A. Wood,* for plaintiffs in error. *M. D. Dickerson, solicitor-general,* contra.

HILL, C. J. The plaintiffs in error were convicted of burglary, and their motion for a new trial was overruled. The indictment alleged that the house burglarized was "the smoke-house and meat house, being a house within the curtilage of the residence of D. S. Wall." The only point of any materiality raised by the record is that the smoke-house was not within the curtilage of the dwelling-house. The proof on this point is as follows: "The smoke-house was situated on the edge of the yard. It was only a short distance from the crib and barns. These buildings were all located immediately around our dwelling. The dwelling was burned on the 4th of February, and the meat was taken on the 30th of March thereafter. After we moved away, the barns and smoke-house were not abandoned. We were still using them. We were there every day to look after the stock. After the dwelling was burned the stable and barns remained where they had been before the dwelling burned. The cattle and stock were kept there. I suppose it was a distance of some two or three hundred yards from the smoke-house to where we lived. We did not move into that house permanently, but temporarily, until we could build up at the same place where the old dwelling burned. Nearly every day the cook would go to the smoke-house and get meat for use in the family. The stock was fed there by the smoke-house, in the stables. The barn was about fifty yards from the smoke-house. I went there two or three times each day to look after the stock. The house we lived in was not in the field where the smoke-house was; it

was across a little branch. A little fence cut the smoke-house off from the crib, but they were in the same field. When our house burned we continued to use the same barns, cribs, and outhouses. When we wanted meat for use, the cook went from the dwelling-house to the smoke-house and got it. My wife went over there every day and looked after the chickens and things. The smoke-house was in the edge of the yard. There was a wire fence on the north side of the yard. The fence had been torn down on the south and west side, and then the only enclosure was the field."

Burglary is defined by the Penal Code as "the breaking and entering into the dwelling, mansion, or storehouse, or other place of business of another, where valuable goods, wares, produce, or any other article of value are contained or stored, with intent to commit a felony or larceny. All outhouses contiguous to or within the curtilage or protection of the mansion or dwelling-house shall be considered as parts of the same." Penal Code (1910), § 146. This evidence shows the relative positions of the dwelling-house, the smoke-house, and the other outhouses on the farm of the prosecutor. The indictment alleges that the smoke-house was within the curtilage of the dwelling-house, and the sole question is: Does the proof support this allegation? This depends upon the true meaning of the word "curtilage," especially as defined by the section of the code above cited. It has been several times said by, learned jurists that it was unfortunate that this term "curtilage," found in the English statutes defining the offense 'of burglary, and which applies to the dwelling and the houses surrounding the dwelling-house in England, should have been perpetuated in the statutes of our different States; for the term is not strictly applicable to the common disposition of enclosures and buildings constituting the homestead of the inhabitants of this country, and particularly of farmers. In England dwellings and outhouses of all kinds are usually surrounded by a fence or stone wall, enclosing a small piece of land embracing the yards and outbuildings near the house, constituting what is called the "court;" and this constitutes the curtilage of the dwelling-house. Jacobs, in his Law Dictionary, says that "curtilage" is "a court-yard, back-side, or piece of ground lying near, and belonging to a dwelling-house." Mr. Bouvier, in his Law Dictionary, defines it to be "a space of ground within a common enclosure, belonging to a dwelling-house."

Mr. Chitty, in his work on General Practice, 175, in commenting upon the various definitions of the word, uses this language: "In its most comprehensive and proper legal signification it includes all that space of ground and buildings thereon, which is usually enclosed within the general fence, immediately surrounding a principal messuage, outbuildings and yard, closely adjoining to a dwelling-house, but it may be large enough for cattle to be levant and couchant therein." Under the common law, burglary could only be committed in a dwelling-house; and for this reason the outhouses which were within the curtilage were considered a part of the dwelling-house. The word "curtilage," in view of its application to the situation of houses and courtyards in England, was restricted in its meaning.

The trend of modern decisions, and especially in the United States, has been to enlarge the original meaning of this word and to include therein any house near enough to the dwelling-house to be within its protection, as a part of the domestic economy of the family, and to consider the same, so far as the crime of burglary is concerned, as a part of the dwelling-house. In the case of the State v. Shaw, 31 Me. 523, it is said: "The curtilage of a dwelling-house is a space necessary and convenient, and habitually used for family purposes, for the carrying on of domestic employments. It includes the garden, if there be one. It need not be separated from the other lands by fences." That was a case of arson, in which the house burned was a barn, and the true question was whether the barn was within the curtilage; not whether it was so near that the burning of it would endanger the house. The barn was not enclosed or encircled by a yard or fence, connecting it with the house, but stood in an open field, with a fence having no special reference to enclosing the house, but simply enclosing the common lot. There was no court or yard enclosing the house. There was but a common fence, enclosing a general field; and the barn was twenty-six rods from the dwelling-house. The court there held that, under this evidence, the barn was within the curtilage of the dwelling-house. In Commonwealth v. Barney, 10 Cush. (Mass.) 480, it was held that whether or not the burned house was within the curtilage of the dwelling-house was a question of fact for the jury, upon proper instructions from the court as to the definition of "curtilage," and that "curtilage," in law, means

a fence or enclosure of a small piece of land around a dwelling-house, and usually includes the buildings occupied in connection with the dwelling-house. Under the common-law authorities, "if the barn, stable, or warehouse be parcel of the mansion-house, and within the same common fence, though not under the same roof or contiguous, a burglary may be committed therein; for the capital house protects and privileges all its branches and appurtenances, if within the curtilage." 4 Black. Com. 224; 1 Hale, P. C. 558. In the case of Ivey v. State, 61 Ala. 58, 61, it was said: "Whatever may have been the signification of the word 'curtilage,' as employed at common law in reference to burglary, we can not doubt that in this statute it includes the yard, or garden, or field, which is near to and used in connection with the dwelling. It is not necessary either should be surrounded by an enclosure. It is the propinquity to the dwelling, and the use in connection with it for family purposes, which the statute regards, and not the fact of its enclosure." Bishop, in his work on Statutory Crimes, lays down the principle that no enclosure with the dwelling-house is necessary to render an outbuilding a part of the dwelling-house, but that the question mainly depends on proximity and use. This principle is further elaborated in section 286 of the work.

In this State, where the no-fence law prevails in some of the counties, the question of enclosure should not be considered as determinate of the question as to whether a house is within the curtilage or protection of the dwelling-house; and the term "yard," especially when used in connection with the locality where the no-fence law prevails, does not mean or suggest an enclosure of any sort, but means rather the plat immediately surrounding the dwelling-house and other buildings used in connection with the dwelling-house for domestic purposes. And an outhouse or outbuilding may be within the curtilage of a dwelling-house, although neither the dwelling-house nor the outbuilding is enclosed. Of course, if the outhouse is enclosed with the dwelling-house by a common fence, and is used in connection with the dwelling-house, even within the definition of the common-law authorities, it will be deemed to be within the curtilage. But under the American decisions, the outhouse is within the curtilage though not enclosed with the dwelling-house by a common fence, if it is situated within

such close proximity as to be conveniently accessible and is actually used in connection with the dwelling-house for domestic purposes. The statute of this State enlarges the definition of the term "curtilage," and gives it a much broader meaning than that given by the common-law authorities. It says: "All outhouses contiguous to or within the curtilage or *protection* of the mansion or dwelling-house shall be considered as parts of the same." In *Bryant* v. *State,* 60 *Ga.* 358, the Supreme Court seems to recognize the use of the phrase "within the protection of the dwelling-house," as an enlargement of the term "curtilage," and holds that if the house is within the protection of the mansion or dwelling-house, although not strictly within the curtilage as understood at common law, it will be protected as a part of the dwelling-house. In that case the house burglarized was a gear-house, separated from the dwelling-house by a fence, and fenced in to itself, but there was a gate between the yard of the gear-house and the main yard, which was left open at night, so as to be under the protection of the yard dog.

But even under the terms of our statute and the broader meaning given to the word "curtilage," we do not think the smoke-house, or "meat house," under the facts of this case, was "contiguous to or within the curtilage or protection of the mansion or dwelling-house." An exhaustive research fails to disclose any decision or authority that would warrant the finding that a house two or three hundred yards from the dwelling-house could be considered as a part of the dwelling-house, especially when not within the common enclosure with the dwelling-house. While the proximity of the outhouse to the mansion or dwelling-house is not the only fact to be considered, yet it is a very important factor in determining the question, and the outhouse, although it may be used for domestic purposes, must be near enough to the dwelling-house to be protected by the occupants of the latter from trespassing of any sort.

For the reasons stated, we conclude that the accused was not guilty of the crime of burglary, but that the offense was larceny from the house. *Hutchins* v. *State,* 3 *Ga. App.* 300 (59 S. E. 848).

*Judgment reversed.*

POTTLE, J., dissenting. Technically the smoke-house was not within the curtilage, but our statute has enlarged the common-law definition. Under the facts of this case the question whether the house broken and entered was within the protection of the dwelling was one of fact for the jury. Therefore I dissent from the judgment.