49758, 49759. McGEE v. THE STATE (two cases).

Deen, Judge.

Two indictments for hog stealing against the defendant involving thefts on April 1 and April 20, 1973 were tried together by agreement. The motion to suppress involves substantially the following facts:

Bullard had some hogs stolen from a fenced in tract of land. Physical evidence indicated that they were dragged over the fence to a place where there were human footprints and tire tracks. The tire tracks were unusual in width, in design, and in the fact that they had been put on "backwards" on the rear wheels. The tracks were followed for some 12 to 15 miles over dirt roads interrupted in places by paved roads, from which the tracks were picked up again on other crisscrossing dirt roads. The final dirt road containing the tracks led past a place where there was a pond and fishing facilities, beyond which were only one or two other houses. The trackers knew the territory and in general the occupants. When they passed the pond: "We tracked it on up to a house which belonged to Mr. Baggs. The first time we tracked it; we seen that white folks lived there [based on knowledge that it was 'the old Fred Hughes place'] and we said, 'Well, this couldn't be,' so on the second time, we tracked the same tracks back to the same place, so this time we went on up to the house and the tracks drove around to a hog pen and there were some hogs and a yearling in a pen." The hogs were in what "looked like an old shelter made into a pen . . . maybe 20 yards off from the back of the house, just an old shed." Under the shed were two pens, one with a yearling calf and the other containing hogs. The evidence on the trial of the case is clear that between the first and second car tracking events the identity of the occupants had been ascertained. Since no one was home, the sheriff called McGee's employer, found that he and his wife were cutting pulpwood, and went to the location where they were working. The rear tires, which matched the tracks, were eventually removed from the truck and used as evidence. The McGees returned to the house, stated they had purchased the hogs from an unidentified person, and offered to return them to Bullard. The hogs could not be seen from the road. Another witness stated: "There's a shelter out there, 15 or 20 yards southwest of the house, and we tracked it right on around there and there was some hogs in there." It is not clear whether or not the shed was completely enclosed. The yard was apparently not fenced.

We cannot agree with the state that the shed, located within 45 to 60 feet of the house on a country farm, is not within the curtilage of the dwelling. The fact that there is no fence is immaterial. *Wright v. State,* 12 Ga. App. 514 (77 SE 657). From the evidence as a whole, it is obvious that the officers knew the road ended at this house, that the house was occupied, and had some general idea of who lived there. They went immediately to the back yard, following the tracks, without any effort to find out whether anyone was inside. The case is within the ruling in *Lewis v. State,* 126 Ga. App. 123, 126 (190 SE2d 123): "What is the effect of their subsequent entry without a warrant onto the defendant's premises? The trucks were right next to the defendant's house within an enclosed yard and within the curtilage. It is the general rule that a warrant is required to search the curtilage. *Black v. State,* 119 Ga. App. 855, 857 (168 SE2d 916). The intrusion under those circumstances was a trespass and unlawful . . . A search is a quest for information and that is exactly what the officers were accomplishing when they entered." It is well settled that Fourth Amendment protection extends to the curtilage of a dwelling house (McDowell v. U. S., 383 F2d 599 and cit.) and a roofed structure within 50 or 60 feet of the back door is well within the protected area, provided it is used for purposes related to the family household and domestic economy. A hog lot was held in Welch v. State, 154 Tenn. 60 (289 SW 510), to be so included, as have hen house, garden and pond. See 79 CJS 790, Searches & Seizures, § 13.

It is obvious that under the circumstances of this case there were no exigent circumstances which would have prevented the officers, as was done in *Lewis v. State,* supra, from obtaining a warrant. The motion to suppress was improvidently overruled.

*Judgment reversed. Eberhardt, P. J., and Stolz, J., concur.*

ARGUED SEPTEMBER 30, 1974 — DECIDED OCTOBER 16, 1974 — REHEARING DENIED OCTOBER 30, 1974 — ■

*Fred B. Hand, Jr.,* for appellant.
*A. Wallace Cato, District Attorney,* for appellee.