## 55060. THOMAS v. THE STATE.

WEBB, Judge.

1. Albert Thomas was found guilty on May 13, 1977 of the offenses of kidnapping and armed robbery, and a jury, finding that the "kidnapping was wantonly horrible in that it involved torture and depravity of mind" and was committed while the offender was engaged in armed robbery, awarded a death sentence. Code Ann. § 27-2534.1. Since death to the victim did not result, the

death penalty must be set aside. Coker v. Georgia, 433 U. S. 584 (97 SC 2861, 53 LE2d 982) (1977); *Collins v. State,* 239 Ga. 45 (235 SE2d 523) (1977); *Stewart v. State,* 239 Ga. 588 (238 SE2d 540) (1977); *Lewis v. State,* 239 Ga. 732 (238 SE2d 892) (1977).

2. Thomas charges as error the trial court's denial of his motion to suppress evidence seized pursuant to a search warrant which he contends was obtained through a violation of his rights guaranteed by the Fourth and Fourteenth Amendments.

Specifically, did the law officer commit an illegal search when with keys taken from the accused he tested the locks, but did not then enter, the premises at 550 Hancock Street in Athens, having been advised by the accused's mother that he lived at that address? The officer testified that he never crossed the threshold of the premises, did not open the door, did not see or hear anything inside, and had received no response to his knock. Finding that the keys were indeed those to the premises at that location he then made an affidavit and obtained a search warrant. On the execution of that warrant, entry was made and the police found in the apartment clothing and personal effects identified by the victim to be his. The police also found therein a .38 caliber pistol, and a witness testified he had given such a pistol to the accused on the evening of the crime. The accused had told the officers that he lived at 170 Macon Avenue, but his sister, Jacklyn Thomas, revealed that he did not. It was Alberta Thomas, mother of Albert Thomas, who pointed out 550 West Hancock as her son's residence.

The building at 550 West Hancock was owned by Laurie Livingston, who lived next door. The structure contained two apartments, divided by a hallway. One apartment was rented to the accused, and the other was vacant at the time of the search warrant.

Thomas relies upon *Lewis v. State,* 126 Ga. App. 123 (190 SE2d 123) (1972); *McGee v. State,* 133 Ga. App. 184 (210 SE2d 355) (1974); and *Wright v. State,* 12 Ga. App. 514 (77 SE 657) (1913) as presenting circumstances similar to the instant case. This reliance is misplaced. In *Lewis,* police officers investigating a burglary actually entered the defendant's yard, checked the serial number

of a water heater and discovered it was stolen. They thereupon obtained a search warrant. In concluding that there was error in the denial of defendant's motion to suppress, this court pointed out: "A search is a quest for information and that is exactly what the officers were accomplishing when they *entered.* . . Thus any information acquired by these officers *after entry* onto defendant's premises was unlawfully obtained as there was no search warrant at that time authorizing *entry.*" *Lewis v. State,* 126 Ga. 123, 126, supra. (Emphasis supplied.) In *McGee,* officers investigating the theft of swine, followed a set of distinctive tire tracks to the defendant's home, and continued to a shelter a few yards from the home where they observed some hogs. This court found that the Fourth Amendment protection extends to the curtilage and that the hog shelter was within the protected area. Neither case involved nonprivate, nonsingle residence property.

Here, the locks that the police officer tried the keys on were to a common hall, not to the accused's rented premises. The placing of the keys in the locks was not a search, for no evidence was seized at that time. The victim was already in the hospital, the robbery had been discovered, the accused had been arrested in a blue Pinto fitting the description of the getaway vehicle, there was blood on the seat and floormat of the car, bloodstains on the accused's shirtsleeves, and in the car there was a bullet slug with hair embedded in it.

There was no error in denying the motion to suppress.

3. Reversible error is charged to the trial court because it admitted into evidence Thomas' exculpatory statement to the police thereby placing his character in evidence. We do not agree.

Jacklyn Thomas testified that she owned a dark blue Pinto which she had lent to her brother at about 9 p.m. on January 28, which was several hours before the robbery and abduction occurred. The sister further testified that only she, her mother, and another sister lived at 170 Macon Avenue. Officer Mitchell then was allowed to testify, for the purpose of proving a sense of guilt on the part of the offender, that the accused had told him that he

lived at 170 Macon Avenue and that he had borrowed Jacklyn Thomas' car about 8 a.m. on January 29, which was several hours after the perpetration of the crimes. Before this testimony by Officer Mitchell, however, the trial court instructed the jury that it was for them "to determine first, whether the statements were made; second, whether they were, if made, . . . intentionally made by the defendant for the purpose of misleading or impeding an investigation. If you should determine that the statements were intentionally made for the purpose of misleading or impeding an investigation you would be authorized to draw or infer from that a sense of guilt on the part of this defendant as to some action on his part. On the other hand, even if you should determine that statements were made and that they were made with the intention of misleading or impeding an investigation, if there was some other reasonable explanation for that having been made such as simply fear on the part of the defendant, or any other reasonable explanation that might appear, then you would not be authorized to draw any inference whatever from the statement, even though you should find that they were intentionally untrue."

Thomas contends that his statements to the police were not incriminatory admissions possessing evidentiary value. In *Birks v. State,* 237 Ga. 861 (230 SE2d 294) (1976) the defendant had been convicted of armed robbery and aggravated assault. Evidence showed Birks had robbed a theatre office at gunpoint at approximately 8:30 one evening. The next day he was arrested in possession of a large sum of money. He did not testify at his trial. Testimony was allowed to show that he told police that he arrived at his aunt's house around dark the night of the robbery, and that the money he had was from an insurance policy. His aunt testified that he did not arrive at her house until 10:30 or 11:00 on the night of the robbery. The court said: "In light of the fact that the robbery occurred around 8:30 p.m. that night, this variance was critical." Ibid., p. 862. "The statements made by appellant were not incriminatory on their face. However, the jury was authorized to conclude that these statements became incriminatory when directly contradicted by his aunt, the only witness at the trial who

could corroborate them." Ibid., p. 863. "If an item of evidence has a tendency to establish a fact in issue, that is sufficient to make it relevant and admissible." *Patterson v. State,* 233 Ga. 724, 725 (213 SE2d 612) (1975).

4. Thomas addressed individually to the Supreme Court two communications, both of which we have considered as briefs, together with the brief by his counsel. He contends, among other things, that his trial counsel "was lax, negligent, and incompetent in his ability" and that the trial judge "went to sleep on several occasions during the trial." Our review of the almost thousand page record of this case indicates to us that counsel for Thomas was indeed competent, attentive and able. He actively and aggressively defended his client. Effectiveness of counsel cannot be fairly measured by the results of a criminal trial. *Sherrell v. State,* 141 Ga. App. 502 (6) (233 SE2d 869) (1977). And there is certainly nothing to indicate that the eminent trial judge was inattentive to the proceedings.

5. This case is remanded to the trial court for sentencing for kidnapping after proper hearing. See Code Ann. §§ 26-1311 and 27-2503.

*Judgment affirmed in part; reversed in part. Quillian, P. J., and McMurray, J., concur.*

ARGUED JANUARY 11, 1978 — DECIDED FEBRUARY 2, 1978 — REHEARING DENIED FEBRUARY 28, 1978 — CERT. APPLIED FOR.

*Robert D. Peckham, Jack H. Affleck, Jr.,* for appellant.

Albert Charles Thomas, *pro se.*

*Harry N. Gordon, District Attorney, B. Thomas Cook, Jr., Assistant District Attorney,* for appellee.