## 59084. BUNN v. THE STATE.

QUILLIAN, Presiding Judge.

We granted defendant's application for interlocutory appeal to consider an issue of first impression in Georgia. Defendant was charged with the offense of burglary. Prior to trial he moved to suppress evidence found by the police in a search outside his apartment residence. His motion was denied and he brings this appeal.

Defendant lived in an apartment in "Arlington Apartments," a private residential apartment complex in Chatham County, Georgia. That portion of the apartment complex relevant to this issue consists of two eight-unit apartment buildings, with the backs of these two buildings facing each other across a common grassy area. On the side of these two buildings nearest the street is a wooden six-feet high privacy fence blocking public view of the area behind each building. There is an opening between the building and the privacy fence which permits a person to pass through to the area behind and between the two apartment buildings. Each of the apartment units in each building has a concrete patio immediately to the rear of the apartment. Between the concrete patio and the building is an air conditioner approximately two feet from the building. There is no divider, or privacy fence, between the individual apartment backyard patios, or between the patio and the common grassy area between the two apartment buildings.

Mr. Fowler, a resident of Arlington apartments in the buildings directly behind the apartment of the defendant, saw the defendant with a bow and arrow near the trash bin across the road from him, at about 11 p.m. He then saw the defendant place these articles behind the air conditioner at the defendant's apartment. Fowler then went to the defendant's apartment, looked behind the air conditioner, and saw a rifle with a scope, a "black powder rifle" and the bow and arrow set. They were not covered. These articles could *not* have been seen "if anybody had looked out the back windows of those apartments . . ." because the "air conditioner . . . would obstruct their view." Fowler called the county police.

Officer Atkinson investigated the call and was told

by Fowler what he had seen. Atkinson and another officer walked across the open area between the two apartment buildings and looked behind the defendant's air conditioning unit. "When [they] were in the immediate vicinity" the light from the defendant's apartment "illuminated the edge of the air conditioning unit" and they saw "approximately six to eight inches of a wooden object protruding from the air conditioning unit." He "shined [his] flashlight on it, walked over to it, and it was a gunstock." The officers confiscated the two rifles, the bow and three arrows and placed them in their police car. The officers spoke to the defendant's mother and she disclaimed any knowledge of the weapons and advised the officers that her son did not own any weapons.

The officer was asked: ". . . you relied on an uncorroborated telephone call from a person who you knew nothing at all about concerning information that was really just suspicious in nature; isn't that correct? A. True. Q. And containing absolutely no evidence that any illegal act had either been committed or was being committed. A. True." The officers contended they did not require a search warrant although they "did not have any permission, implied or actual, to come up into this patio area of the defendant . . ." Approximately 30 to 45 minutes after they had confiscated the articles they were informed of a burglary that had taken place earlier and they determined that the articles secreted by the defendant had been stolen. *Held:*

1. Mr. Fowler's observance of the defendant with a bow and arrow set is not indicative of any criminal law violation. It may have been suspicious, but "suspicion" is not a valid ground for a legal search. Wong Sun v. United States, 371 U. S. 471, 479 (83 SC 407, 9 LE2d 441). Fowler's intrusion onto the patio of the defendant was a trespass, "the Supreme Court [has] ruled that the Fourth Amendment, though textually not so limited, actually afforded protection only against unreasonable searches and seizures made by governmental officers. Therefore, however unreasonable a search by a private person may be, absent participation by governmental agents the Fourth Amendment is totally uninvolved . . ." *State v. Young,* 234 Ga. 488 (1) (216 SE2d 586), cert. den. 423

U. S. 1039. Assuming Mr. Fowler's intrusion was a trespass and was without probable cause, it did not taint the subsequent investigation of the police.

2. The officers were without probable cause to search as they had no information of the commission of a crime, and the record is devoid of any exigent circumstances. There is no claim of consent to search and an arrest was not made. The critical remaining issue is whether an apartment dweller may claim the protection of the Fourth Amendment in an area adjacent to his apartment.

The United States Supreme Court stated: "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U. S. 505, 511 (81 SC 679, 5 LE2d 734). It is generally held that the constitutional guaranties of freedom from unreasonable search and seizure, applicable to one's home, refer to his dwelling and other buildings within the curtilage but do not apply to open fields, orchards or other lands not an immediate part of the dwelling site. Hester v. United States, 265 U. S. 57, 59 (44 SC 445, 68 LE 898).

"Prima facie, a search made within the curtilage of the owner without a warrant is unconstitutional and void. 'Curtilage' includes the yards and grounds of a particular address, its gardens, barns, buildings, etc. Bellamy v. State, 134 Ga. App. 370." Norman v. State, 134 Ga. App. 767, 768 (216 SE2d 644). In Bellamy, supra, a truck parked in the driveway was found to be within the curtilage. In Norman, supra, we found a truck within 200 feet of the house to be within the curtilage. A barn "70 or 80 yards away" from the house is within the curtilage. Walker v. United States, 225 F2d 447 (5th Cir. 1955). Also, in McGee v. State, 133 Ga. App. 184, 186 (210 SE2d 355), we found a shed within 45 to 60 feet of the house on a farm is within the curtilage and "[t]he fact that there is no fence is immaterial." See also Wright v. State, 12 Ga. App. 514, 517 (77 SE 657), where this court found that an enclosure was unnecessary to mark the boundary of the curtilage.

The U. S. Supreme Court abandoned the concept of property interests controlling application of the Fourth

Amendment in Katz v. United States, 389 U. S. 347, 353 (88 SC 507, 19 LE2d 576) by holding: ". . . once it is recognized that the Fourth Amendment protects people — and not simply 'areas' — against unreasonable searches and seizures, it becomes clear that the reach of that Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure." Recently — in Rakas v. Illinois, —- U. S. —- (99 SC 421, 58 LE2d 387) the Supreme Court reaffirmed Katz by stating that "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Id. at 401; accord, United States v. Chadwick, 433 U. S. 1, 7 (97 SC 2476, 53 LE2d 538).

Thus, the single issue to be decided is whether the defendant had a legitimate expectation of privacy in that area where he secreted the seized weapons. Although property concepts are no longer controlling in application of Fourth Amendment rights, we will not discard them entirely, but will consider them in conjunction with the totality of all the circumstances surrounding claimed violations of Fourth Amendment rights. United States v. Carriger, 541 F2d 545, 549 (6th Cir. 1976). Appellate courts have consistently held whenever government agents enter upon tbe curtilage they necessarily intrude upon the individual's reasonable expectation of privacy. United States v. Williams, 581 F2d 451, 453 (5th Cir. 1978).

Does an apartment renter or owner in Georgia have a reasonable expectation of privacy in the curtilage surrounding his apartment? We find that he does. The U. S. Supreme Court has considered a similar problem. Police — without authority, entered a landlady's room in a tenant house where the defendant lived. The court stated that had the police been admitted as guests of another tenant or had the approaches been thrown open by an obliging landlady or doorman, police could then legally enter the *common area*. McDonald v. United States, 335 U. S. 451, 458 (concurring opinion) (69 SC 191, 93 LE 153). "A tenant expects other tenants and invited

guests to enter in the common areas of the building, but he does not expect trespassers . . ." United States v. Carriger, 541 F2d 545, 551, supra.

Because a tenant in an apartment expects other tenants and their invitees to enter the common area of the apartment complex they have no reasonable expectation of privacy therein. Accordingly, in the instant case, the invited police officers were lawfully in the common area but were without probable cause to intrude into the "immediate vicinity" of the defendant's patio at the rear of his apartment. "The yard immediately surrounding one's dwelling is well within the curtilage." *Black v. State,* 119 Ga. App. 855, 857 (168 SE2d 916); accord, *Wright v. State,* 12 Ga. App. 514, 517, supra. From the point where the police had intruded within the curtilage the officers saw only a "wooden object" protruding beyond the unit. When they "walked over to it . . . it was a gunstock."

First, "[a] dwelling place, whether flimsy or firm, permanent or transient, is its inhabitant's unquestionable zone of privacy under the Fourth Amendment, for in his dwelling a citizen unquestionably is entitled to a reasonable expectation of privacy." *Kelley v. State,* 146 Ga. App. 179, 182-183 (245 SE2d 872). Secondly, the officers intruded within the curtilage without a warrant, without probable cause, and without exigent circumstances. " '[N]o amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances.' " Coolidge v. New Hampshire, 403 U. S. 443, 468 (91 SC 2022, 29 LE2d 564).' " *Love v. State,* 144 Ga. 728, 736 (242 SE2d 278). "Where, as here, officers are not responding to an emergency, there must be compelling reasons to justify the absence of a search warrant. A search without a warrant demands exceptional circumstances . . . The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police . . . The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals." McDonald v. United States, 335 U. S. 451, 454, 455, supra.

Last, it is uncontrovertable that the defendant had a

reasonable expectation of privacy within the curtilage and had attempted to secrete the articles behind the air conditioner adjacent to his apartment. See *Black v. State,* 119 Ga. App. 855, 857, supra.

This case does not fall within the "plain view" doctrine (Ker v. California, 374 U. S. 23, 43 (83 SC 1623, 10 LE2d 726)) as the officers had intruded within the curtilage before they saw the articles hidden behind the air conditioner. *Black v. State,* supra. Even at that point, probable cause to search did not exist, i.e. *"whether at that moment"* the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information were sufficient to warrant a prudent person in believing the defendant had or was committing an offense. (Emphasis supplied.) Beck v. Ohio, 379 U. S. 89, 91 (85 SC 223, 13 LE2d 142).

The intrusion by police officers into the curtilage, without probable cause to search or arrest, without a warrant, and without exigent circumstances, rendered ·the subsequent seizure invalid. *Black v. State,* 119 Ga. App. 855, supra; *Lewis v. State,* 126 Ga. App. 123, 126 (190 SE2d 123); *McGee v. State,* 133 Ga. App. 184, 186, supra.

*Judgment reversed. Shulman and Carley, JJ., concur.*

ARGUED JANUARY 7, 1980 — DECIDED FEBRUARY 1, 1980 —

*Michael H. Graham,* for appellant.
*Andrew J. Ryan, III, District Attorney, Michael K. Gardner,* for appellee.