## 64882. OLSON v. THE STATE.

CARLEY, Judge.

Appellant was convicted of trafficking in marijuana in violation of OCGA § 16-13-31 (c) (Code Ann. § 79A-811) and sentenced to 20 years' imprisonment with an accompanying $25,000 fine. He challenges on appeal the partial denial of his motion to suppress the marijuana found on his property, the admission of statements made by appellant at the time of and shortly after his arrest, the admission of evidence concerning the weight of the marijuana confiscated from his property, and the legality of the 20-year sentence.

1. On September 3, 1981, Officers Boddie and Cox of the Palmetto City Police Department received a tip that three fields of marijuana were growing on appellant's property, a 400-acre tract in Coweta County. The officers and the informer proceeded to an apparently abandoned house located on appellant's property. Boddie testified that they crossed a portion of appellant's property before reaching the house, but that he was not sure at the time where appellant's property line was located and that he saw no signs or fences demarking the property.

Upon their arrival at the abandoned house, Cox located a large amount of suspected marijuana lying under a plastic sheet in the front yard. Boddie left Cox at the scene and met Officer Thompson of the Coweta County Sheriff's Department near a gated, dirt road entering the property. While positioned near the gate, Boddie and Thompson received a radio message from Cox indicating that some unidentified vehicles had pulled up to the abandoned house, that an unidentified person had moved the suspected marijuana, and that the vehicles were leaving the house. Within two to four minutes, two vehicles, including a van being driven by appellant, reached the gate at which Thompson and Boddie were located. Thompson halted the van, spoke with appellant, and shortly thereafter arrested appellant. A search of the van revealed a large quantity of marijuana. Appellant was taken to Coweta County Jail where he was detained throughout the night of September 3.

After arresting appellant, Thompson obtained a search warrant for appellant's property. A search of the abandoned house and appellant's residence, located approximately one-half mile from the

abandoned house, revealed additional marijuana located in both structures.

On September 4, 1981, Thompson, accompanied by appellant, again searched the premises. Appellant led Thompson to three separate marijuana fields, each of which was well hidden behind plum thickets. Thompson confiscated the marijuana growing in two of the fields. Appellant also led Thompson to a large quantity of marijuana stored in five barrels within a shed near the abandoned house.

Appellant moved to suppress all of the marijuana found on his property and in his vehicle. The trial court granted the motion as to the marijuana found in his residence and vehicle but denied the motion as to the marijuana obtained pursuant to the warrant from the abandoned house, from a shed near the abandoned house, and from the fields. Appellant challenges this partial denial of his motion.

Appellant argues that all of the marijuana seized was the result of an illegal search and is thus tainted and inadmissible under the exclusionary rule. See Mapp v. Ohio, 367 U. S. 643 (81 SC 1684, 6 LE2d 1081) (1961); Katz v. United States, 389 U. S. 347 (88 SC 507, 19 LE2d 576) (1967). Appellant's position is premised upon an assertion that he had a reasonable expectation of privacy in the abandoned house and its curtilage, wherein marijuana was first spotted by Cox, that the warrantless "search" of the property surrounding the abandoned house based upon the informant's tip was illegal, and that the warrant obtained later was based solely upon this illegally-obtained information. In response, the state argues that the initial visit by Boddie and Cox to the abandoned house was justified under the "open fields" doctrine enunciated in Hester v. United States, 265 U. S. 57, 59 (44 SC 445, 68 LE 898) (1924). See *Giddens v. State,* 156 Ga. App. 258 (1) (274 SE2d 595) (1980).

"[C]onstitutional guaranties of freedom from unreasonable search and seizure, applicable to one's home, refer to his dwelling and other buildings within the curtilage but do not apply to open fields, orchards or other lands not an immediate part of the dwelling site." *Bunn v. State,* 153 Ga. App. 270, 272 (265 SE2d 88) (1980). It is not the physical character of a structure that determines whether it is a "dwelling"; rather, it is the actual habitation of a structure that makes it a "dwelling." See *LoGiudice v. State,* 164 Ga. App. 709 (297 SE2d 499) (1982). "[T]he Fourth Amendment protects people, not places."Katz v. United States, 389 U. S. 347, 351, supra. "A dwelling place, whether flimsy or firm, permanent or transient, is its inhabitant's unquestionable zone of privacy under the Fourth Amendment, for in his dwelling a citizen unquestionably is entitled to a reasonable expectation of privacy." *Kelley v. State,* 146 Ga. App.

179, 182-183 (245 SE2d 872) (1978). Thus, an inhabited tent constitutes a "dwelling" with a "curtilage." Id., p. 183. However, an uninhabited house, though more similar in physical nature to a "dwelling" than a tent, does not constitute a "dwelling" for Fourth Amendment purposes.

The uninhabited house in question was located on a tract of land containing an inhabited house. However, the two houses were approximately one-half mile apart, and one could not be seen from the other. "While the proximity of the outhouse to the mansion or dwelling-house is not the only fact to be considered, yet it is a very important factor in determining the question [of whether the outhouse is within the curtilage], and the outhouse, although it may be used for domestic purposes, must be near enough to the dwelling-house to be protected by the occupants of the latter from trespassing of any sort." *Wright v. State,* 12 Ga. App. 514, 518 (77 SE 657) (1913). Thus, in *Wright,* the smokehouse "two or three hundred yards from the dwelling-house" was not considered part of the curtilage. Likewise, in the present case, the record amply supports the finding that the abandoned house and its surrounding property were not part of the curtilage of appellant's residence. "[The trial judge's] finding[s] on a motion to suppress must not be disturbed by this court if there is any evidence to support [them]." *Vines v. State,* 142 Ga. App. 616, 617 (237 SE2d 17) (1977). Consequently, the trial court correctly concluded that the sighting of the marijuana under the plastic cover in the yard of the abandoned house was authorized pursuant to the "open fields doctrine."

Appellant argues, however, that he had a reasonable expectation of privacy in the area around the abandoned house, irrespective of whether it was part of the curtilage of his residence. However, the officers testified that they did not see any "no trespassing" signs or fences blocking their entry on to the property. According to Boddie's testimony at the motion to suppress hearing, "[t]he officers received no notice prior to their entry that the owner or rightful occupant forbade such entry." *Giddens v. State,* supra, p. 259. Consequently, despite conflicting evidence, the trial court was authorized in concluding that the facts demonstrated that appellant had no reasonable expectation of privacy in the area where the marijuana was first discovered. *Giddens,* supra; *LoGiudice,* supra.

2. The search warrant issued on September 3, 1981, upon the affidavit of Thompson, which stated that probable cause was based primarily upon "[i]nformation received from a fellow police officer ... that a large amount of suspected marijuana was being stored in and about the premises. Officer received the information within 24 hours of 9-3-81." The "above premises" was described as that leased by

appellant, and the warrant contained the address of appellant's house as well as a description of the route to the property. Also listed as property to be searched was "another woodframe house." The item to be seized was listed as "marijuana." The affidavit clearly was sufficient to authorize the issuance of the search warrant. *Caffo v. State,* 247 Ga. 751 (2) (279 SE2d 678) (1981); *Cunningham v. State,* 133 Ga. App. 305, 309 (211 SE2d 150) (1974).

Nevertheless, appellant attacks the warrant on the ground that the information relied upon was insufficient since Cox's intrusion upon the premises was illegal. However, we have already determined that Cox had a right to be where he was so as to make his observations. See Divisions 1 and 2 above. Appellant also attacks the warrant on the ground that the abandoned house was not described with sufficient specificity. "The description of the premises to be searched is sufficient if a prudent officer executing the warrant is able to locate the premises definitely and with reasonable certainty." *McNeal v. State,* 133 Ga. App. 225, 227 (211 SE2d 173) (1974). Thompson testified that he was very familiar with appellant's property and knew the location of the abandoned house. Finally, we find that the warrant contained no technical irregularity "affecting the substantial rights of [appellant]." OCGA § 17-5-31 (Code Ann. § 27-312). The warrant in the present case was legally sufficient and the trial court did not err in denying those portions of appellant's motion to suppress relating to the marijuana admitted at trial.

3. After a Jackson-Denno hearing at which the trial court ruled that appellant's statements were "made in compliance with the Constitution of the United States and the Constitution of the State of Georgia," Thompson was allowed to testify at trial regarding statements made by appellant at and near the time of his arrest. Appellant, arguing that his arrest was without probable cause and therefore illegal, asserts that any concurrent or subsequent statement made by him was the fruit of the illegal arrest and inadmissible. See United States v. Crews, 445 U. S. 463 (100 SC 1244, 63 LE2d 537) (1980); Wong Sun v. United States, 371 U. S. 471 (83 SC 407, 9 LE2d 441) (1963).

"The question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case . . . The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, [cit.] and, particularly, the purpose and flagrancy of the official misconduct are all relevant. [Cit.] The voluntariness of the statement is a threshold requirement. [Cit.] And

the burden of showing admissibility rests . . . on the prosecution." Brown v. Illinois, 422 U.S. 590, 603 (95 SC 2254, 45 LE2d 416) (1975).

We are bound by the trial court's findings as to credibility arising from a Jackson-Denno hearing unless they are clearly erroneous (*Rachel v. State*, 247 Ga. 130, 133 (274 SE2d 475) (1981)), and the evidence adduced at the hearing supported the following concerning appellant's arrest and statements: Two to four minutes after receiving word from Cox that vehicles were leaving the scene of the abandoned house with suspected marijuana, Thompson stopped appellant's van at a gated, dirt road leading from the property. Thompson told appellant, whom he knew personally to be the owner of the property, to get out of the van. He identified himself and explained his presence on appellant's property. Appellant then stated that he suspected marijuana was growing on his property and that he wanted to make a deal for information concerning the person who was responsible for the marijuana. Thompson then requested permission to search appellant's property, at which time appellant stated that he would like legal advice or counsel. Thompson then read appellant his Miranda warnings, which appellant acknowledged and understood. Appellant was then placed under arrest and taken to the sheriff's office, where he requested to talk with Thompson. After again receiving Miranda warnings, appellant informed Thompson that "people in Atlanta" were growing marijuana on his property. Appellant stated that he had helped harvest some marijuana and helped move it into the abandoned house. Thompson and appellant discussed "the men in Atlanta bringing the marijuana down and looking for a place to bury the marijuana," and appellant made reference to marijuana being grown behind the house.

Thompson obtained the search warrant. Appellant remained in detention the night of September 3. The next day appellant again received Miranda warnings and agreed to walk Thompson around the property. During the tour of the property, appellant led Thompson to three marijuana fields and five barrels of marijuana stored in a shed adjacent to the abandoned house.

Under these facts, some of which conflicted with appellant's testimony at the hearing but all of which were supported by the evidence, the trial court was authorized to conclude that appellant's statements and actions were both voluntary and acts of free will so as to purge the alleged taint of the alleged illegal arrest. Brown v. Illinois, 422 U.S. 590, supra. In Rawlings v. Kentucky, 448 U. S. 98, 106-110 (100 SC 2556, 65 LE2d 633) (1980), the majority opinion upheld the admissibility of the defendant's statement admitting ownership of drugs despite the fact that the statement was made at a time when he was being illegally detained. The opinion emphasized

the following factors in reaching its conclusion: (1) Miranda warnings were given moments before the statement; (2) the defendant was detained in a congenial atmosphere; (3) the statement apparently was a spontaneous reaction to the discovery of his drugs; (4) the statement clearly was voluntary; and (5) the absence of purposeful and flagrant misconduct on the part of the detaining officers. As to the importance of the latter factor, see *Thompson v. State,* 248 Ga. 343 (285 SE2d 685) (1981). The evidence supports a finding that each of these five factors was present to some degree in this case. Unlike Taylor v. Alabama, —— U. S. —— (102 SC 502, 73 LE2d 314) (1982), Dunaway v. New York, 442 U.S. 200 (99 SC 2248, 60 LE2d 824) (1979), or Brown v. Illinois, supra, the facts of this case justify the trial court's conclusion that the admission of the statements did not abridge appellant's constitutional rights, as they were made freely and voluntarily and constituted acts of free will unaffected by any alleged illegality in the detention of appellant. In so holding we do not intimate, however, that the initial stop and subsequent arrest of appellant was illegal, only that even if it were, his post-arrest statements were not erroneously admitted. In light of the above discussion, we need not reach the issue of the legality of appellant's arrest.

4. Appellant objects on two grounds to the admission of Thompson's testimony regarding the weight of the marijuana (389 lbs.) contained in the barrels which were introduced into evidence.

First, appellant argues that the state did not comply with OCGA § 17-7-211 (c) (Code Ann. § 27-1303) in that it failed to produce a written scientific report on the weight of the marijuana. Appellant relies on *Tanner v. State,* 160 Ga. App. 266 (287 SE2d 268) (1981). However, the record establishes that no written report regarding the weight of the marijuana ever existed. OCGA § 17-7-211 (c) (Code Ann. § 27-1303) applies only to "any *written* scientific report" (emphasis supplied) and does not serve to exclude testimony where no such report was in the possession of the state. See *Billings v. State,* 161 Ga. App. 500 (3) (288 SE2d 622) (1982). Although it might be argued that to permit the introduction of this evidence in this case will be precedent for the state deliberately to instruct witnesses not to prepare reports otherwise discoverable pursuant to OCGA § 17-7-211 (c) (Code Ann. § 27-1303), there is no evidence suggesting bad faith on the part of the prosecution in this case. See *Billings,* supra. In fact, Thompson testified on cross-examination that he had informed defense counsel prior to trial of the weight of the marijuana. This enumeration is without merit.

Appellant's second objection to Thompson's testimony concerning the weight of marijuana is based on a hearsay ground.

Thompson testified that the marijuana was weighed on a scale that had recently been marked certified, but that he had no personal knowledge concerning the calibration of the scale. It appears that Thompson's testimony regarding the weight of the marijuana was based on his own personal knowledge and did not "rest mainly on the veracity and competency of other persons." OCGA § 24-3-1 (Code Ann. § 38-301). A witness may testify regarding a measurement he made personally. *Dyson v. Sellers,* 24 Ga. App. 411 (100 SE 791) (1919). Compare *Taylor v. State,* 144 Ga. App. 534 (2) (241 SE2d 590) (1978). Any evidence relating to the reliability of the scale used to weigh the marijuana, which was brought out on cross-examination, went solely to the weight and credibility of Thompson's testimony and was a matter for the jury.

5. The final enumeration of error challenges the legality of the 20-year sentence. Appellant urges that a maximum sentence of 10 years is provided for those convicted of selling, manufacturing, growing, or possessing a quanitity of marijuana in excess of 100 pounds but less than 2,000 pounds.

"Crimes are punishable by the laws in existence at the time of their commission." *Gibson v. State,* 35 Ga. 224 (1) (1866). Unfortunately, the relevant statute in effect on September 3, 1981 (former Code Ann. § 79A-811 (1) (Ga. L. 1980, pp. 432, 435)), appears to be neither clear nor complete. That statute, insofar as it is relevant to appellant's sentence, provided: "Marijuana. (1) It is unlawful for any person to possess, have under his control, manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute marijuana. (2) *Except as otherwise provided in this subsection* . . ., any person who violates this subsection shall be guilty of a felony and *shall be punished by imprisonment for not less than one year nor more than ten years.* (3) Any person who knowingly sells, manufactures, grows, delivers, or brings into this State, or who is knowingly in actual possession of, in excess of 100 pounds of marijuana shall be guilty of the felony of 'Trafficking in Marijuana.' If the quantity of marijuana involved: (a) Is in excess of 100 pounds, but less than 2,000 pounds, *such person shall be sentenced to a mandatory minimum term of imprisonment of five years* and to pay a fine of $25,000 . . ." (Emphasis supplied.)

In sentencing appellant to twenty years, the trial court, in effect, construed former Code Ann. § 79A-811 (1) (3) as setting no maximum penalty for trafficking in marijuana. However, it is our duty to construe penal statutes "strictly against the state and liberally in favor of human liberty. [Cits.]" *Curtis v. State,* 102 Ga. App. 790, 801-802 (118 SE2d 264) (1960). " '[W]here any uncertainty develops as to which penal clause is applicable, the accused is entitled to have

the lesser of two penalties administered.' [Cit.]" *Hartley v. State,* 159 Ga. App. 157, 162 (282 SE2d 684) (1981). When all subsections of former Code Ann. § 79A-811 (l) are read in conjunction with one another, as the statute clearly indicates they should, subsection (l) (3) (a) of that former statute would authorize only a maximum sentence not to exceed ten years. This follows from the fact that, although former Code Ann. § 79A-811 (l) (3) (a) did provide "otherwise" as to the mandatory "minimum" sentence for the crime appellant committed, a maximum penalty for that crime was *not* "otherwise provided" therein. Although this omission of a maximum penalty was rectified in 1982 (see OCGA § 16-13-31 (f)), since former Code Ann. § 79A-811 (l) (2) stated that, "[e]xcept as otherwise provided in this subsection [former Code Ann. § 79A-811 (l)]," a violation of that subjection "shall" be punishable by imprisonment for not "more than ten years" and subsection (l) (3) (a) did not "otherwise" provide for the imposition of a sentence greater than ten years, the maximum sentence imposable against appellant for violating former Code Ann. § 79A-811 (l) (3) (a) would be ten years.

Accordingly, appellant's twenty-year sentence must be reversed and the case remanded to the trial court with direction that appellant be resentenced to a term of imprisonment not less than five years but not greater than ten years.

6. For the reasons discussed above, appellant's conviction is affirmed and his sentence is reversed with direction.

*Judgment affirmed as to conviction and reversed and case remanded as to sentence. Quillian, P. J., McMurray, P. J., Banke and Sognier, JJ., concur. Shulman, C. J., Deen, P. J., Birdsong and Pope, JJ., dissent.*

DECIDED MARCH 16, 1983 —
REHEARINGS DENIED MARCH 31, 1983 —

*Howard J. Manchel, Donald F. Samuel,* for appellant.
*Arthur E. Mallory III, District Attorney, Robert H. Sullivan, Blanchette C. Holland, Assistant District Attorneys,* for appellee.

SHULMAN, Chief Judge, dissenting.
Although I fully concur in the result and reasoning of the first four divisions of the majority opinion, I respectfully must dissent to the statutory analysis set forth in Division 5. I believe Code Ann. § 79A-811 (l) (3) (OCGA § 16-13-31 (c) (1)) to be clear in its mandate that trafficking in marijuana shall carry the increased, minimum sentences specified and that the 10-year limitation imposed by Code

Ann. § 79A-811 (l)(2) (OCGA § 16-13-30 (j) (2)) shall not apply to the trafficking provisions. I reach this conclusion on the basis of the clear and unambiguous wording of those penalty provisions.

I do not agree with the majority's conclusion that the trafficking penalties applicable to this case are unclear. Code Ann. § 79A-811 (l) (2) is limited by the proviso: "Except as otherwise provided in this subsection . . ." The subsection then goes on to specify a one to 10-year sentence for possession of marijuana. Code Ann. § 79A-811 (l) (3) *clearly provides otherwise:* trafficking brings a *minimum* five, 10, or 15-year sentence depending upon the weight of the marijuana seized. It is patently erroneous to apply a 10-year maximum sentence provision to an offense for which a 15-year minimum sentence may be required. Clearly, the statute applicable to the offense simply failed to specify a maximum penalty.

The majority concedes that its result is obtained only because the trafficking provisions contain no separate, specified maximum penalty. However, the law is clear that "[t]he duration of imprisonment . . . when not regulated by statute, is subject to the sound discretion of the court, or the presiding judge." *Kingsbery v. Ryan,* 92 Ga. 108, 118 (17 SE 689). "The punishment can not be cruel, unusual, or excessive, but must be reasonable in view of the particular facts and circumstances." *Brooks v. Sturdivant,* 177 Ga. 514, 516 (170 SE 369). I have located no authority prohibiting the legislature from enacting a penal provision providing minimum punishment but leaving the maximum permissible sentence to the discretion of the trial court. Thus, the majority's concern about leaving without a cap the now defunct (see OCGA § 16-13-31 (f)) penalty provisions for trafficking in marijuana is unfounded.

In addition to misconstruing the wording of the statute, the majority puts forth an interpretation that will have to be rectified in the near future. The legislature has amended OCGA § 16-13-31 (Code Ann. § 79A-811) to provide for a 30-year maximum sentence for trafficking in cocaine, illegal drugs, and marijuana. Ga. L. 1982, p. 2215. However, OCGA § 16-13-30 (j) (2) ("Except as otherwise provided in *subsection (c) of Code Section 16-13-31. . .*" (emphasis supplied)) and OCGA § 16-13-31 (c) were not amended; thus, the majority's application of the 10-year maximum sentence in § 16-13-30 (j) (2) to § 16-13-31 (c) appears to remain unaffected by the 1982 amendment. Consequently, either the holding in Division 5 of this opinion will have to be overruled or "marijuana" will have to be read out of § 16-13-31 (f).

I would affirm the trial court's sentence as being lawful under the statute governing this offense.

I am authorized to state that Presiding Judge Deen and Judges

Birdsong and Pope join in this dissent.