## 73948. THE STATE v. CHANDLER.
(360 SE2d 727)

CARLEY, Judge.

In August of 1985, appellee was originally sentenced to 12 months probation for a misdemeanor offense. Subsequently, a probation revocation petition was filed. Following a hearing, the sentencing judge entered an order remanding appellee "to the custody of a Diversion Center as recommended by his probation officer and approved by the court." In April of 1986, appellee was indicted for the offense of felonious escape, based on allegations that, "having been lawfully committed to the custody of the Athens Diversion Center, said accused did unlawfully and intentionally fail to return as instructed to the lawful custody of the Athens Diversion Center after having been released to seek employment on the condition that he would return to the Athens Diversion Center." The trial court dismissed the indictment, holding that when a defendant, such as appellee, has been ordered to reside at a diversion center as a special condition of his probation, he does not commit the crime of "escape" if he leaves that facility without authority. The State appeals from the order dismissing appellee's indictment.

The orders entered by the sentencing judge following the revocation proceedings had the effect of modifying the terms and conditions of appellee's probation, not of revoking his probation. Had the sentencing judge intended to revoke appellee's probation, it would have sentenced him to confinement pursuant to OCGA § 17-10-3 (a). However, a sentencing judge has wide authority and latitude to impose

special conditions of probation pursuant to OCGA § 42-8-35, including a requirement that the defendant reside at a diversion center. See generally *Gay v. State*, 101 Ga. App. 225 (1) (113 SE2d 223) (1960). Accordingly, the issue presented for resolution is whether the failure of one, such as appellee, to abide by such a requirement will subject him to a prosecution for the felony offense of escape, and not merely to a revocation of his probation.

"A person commits the offense of escape when he: Intentionally fails to return as instructed to lawful custody or lawful confinement after having been released on the condition that he will so return. . . ." OCGA § 16-10-52 (a) (3). It is true that appellee was not in "lawful confinement" at the diversion center. Compare *Hendrickson v. State*, 159 Ga. App. 628 (284 SE2d 645) (1981); *Hornsby v. State*, 159 Ga. App. 672 (284 SE2d 630) (1981). However, there appears to be no reason in law or logic why appellee should not be considered as having been in the "lawful custody" of the diversion center. Appellee certainly was not a voluntary resident of the diversion center. He was sent there by the sentencing court because he had already violated his probation. Obviously, the sentencing court was of the belief that, although appellee did not warrant incarceration for the violation of his probation, he did require a more structured probational environment. The diversion center provided that environment in that appellee would not be free to come and go at will. More importantly, he would not be free to go and stay at will. Undoubtedly, it was for this very reason that the sentencing court's order stated that appellee was to "be remanded to the *custody* of a diversion center. . . ." (Emphasis supplied.) Insofar as there were limits placed on appellee's freedom of movement short of his actual incarceration, it is abundantly clear that he was within the "lawful custody" of the diversion center. "Custody" is a term which "is very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession." Black's Law Dictionary (4th ed. 1951). Thus, "custody" does not require actual imprisonment and, if a sentencing court orders a defendant to serve his probation within the confines of a diversion center which purports to exercise the power to impose restrictions on his freedom to leave, he is within the "lawful custody" of that facility.

It is also true that appellee's unauthorized departure from the diversion center was a violation of the conditions of his probation and could result in the revocation of his probation. However, probation revocation and criminal prosecutions are not mutually exclusive punishments. If appellee's unauthorized departure were also to constitute the violation of a criminal statute, the possible revocation of his probation would not serve to insulate him from any additional responsibility for having violated that statute. At least a part of the legislative

intent underlying enactment of subsection (a) (3) of OCGA § 16-10-52 was undoubtedly to criminalize a probationer's act of intentionally failing to return to the diversion center in the lawful custody of which he had been placed by a sentencing judge. Penal statutes are to be construed strictly against the State and liberally in favor of human liberty. They are not, however, to be construed so as to reach illogical results. The trial court's order dismissing the indictment on the basis that appellee bears no criminal responsibility for violating OCGA § 16-10-52 (a) (3) is reversed.

*Judgment reversed. Deen, P. J., McMurray, P. J., Pope and Beasley, JJ., concur. Birdsong, C. J., Banke, P. J., Sognier and Benham, JJ., dissent.*

BANKE, Presiding Judge, dissenting.

I respectfully dissent. While a sentencing judge has wide authority and latitude to impose special conditions of probation, including a requirement that the defendant reside at a diversion center, I do not believe that the failure of a defendant to abide by such a requirement subjects him to prosecution for the felony offense of escape, but merely to revocation of his probation under OCGA § 42-8-38. Many limitations placed on a probationer pursuant to a probation order necessarily result in the limitation of his freedom of movement. I cannot agree with the majority's conclusion that because of the special condition of probation imposed on the appellee, "it is abundantly clear that he was within the 'lawful custody' of the diversion center," and, therefore, subject to the escape statute. As the majority recognizes, "[p]enal statutes are always construed strictly against the state and liberally in favor of human liberty." *Curtis v. State*, 102 Ga. App. 790, 801-802 (118 SE2d 264) (1960); *Olson v. State*, 166 Ga. App. 104 (5) (303 SE2d 309) (1983).

I am authorized to say that Chief Judge Birdsong, Judge Sognier, and Judge Benham join in this dissent.

DECIDED JULY 16, 1987 —
REHEARING DENIED JULY 31, 1987 —

*Harry N. Gordon, District Attorney, Richard J. Weaver, Assistant District Attorney*, for appellant.
*John Martin, Timothy W. Floyd, Sara F. Miller*, for appellee.